# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SHIRLEY A. JAMISON,** | : CIVIL ACTION NO. 1:07-CV-0324 |
| **Plaintiff** | : (Judge Conner) |
| v. | : |
| **CAMPBELL CHAIN COOPER TOOLS,** | : |
| **Defendant** | : |

## MEMORANDUM

Plaintiff Shirley A. Jamison ("Jamison"), a former employee of defendant Campbell Chain Cooper Tools ("Campbell"), brings this action pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* Plaintiff alleges that defendant unlawfully discriminated against her and discharged her on the basis of her disability. Plaintiff also advances a claim under Pennsylvania state law for breach of contract. Presently before the court is defendant's motion for summary judgment (Doc. 33). For the reasons that follow, the motion will be granted.

## I. Statement of Facts and Procedural History[1]

On May 31, 1988, defendant hired plaintiff. (Doc. 35 ¶ 9; Doc. 56 ¶ 9.) After working as a hook-up operator, she accepted a job bid as a material handler on June 1, 1998. (Doc. 35 ¶¶ 9-10; Doc. 56 ¶¶ 9-10.) Plaintiff's responsibilities as a material handler included operating a forklift. (Doc. 35 ¶ 10; Doc. 56 ¶ 10.) During

---

[1] In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to the plaintiff, the nonmoving party. See infra Part II.

the course of her employment, plaintiff acknowledged receipt of defendant's associate handbook, which contains, in pertinent part, a policy against employment discrimination, an attendance policy, and a disclaimer of the creation of any contractual rights. (Doc. 35 ¶¶ 11-13, 21; Doc. 56 ¶¶ 11-13, 21.) Plaintiff also participated in defendant's 401(k) retirement plan during the course of her employment, which is an employee benefit plan covered by the Employee Retirement Income Security Act ("ERISA"). (Doc. 35 ¶¶ 23, 25; Doc. 56 ¶¶ 23, 25.)

In early 2005, plaintiff sustained a non-work-related back injury and notified defendant that she would need time off to recover. (Doc. 35 ¶ 27; Doc. 56 ¶ 27.) On or about February 24, 2005, defendant approved plaintiff for medical leave, pursuant to the Family and Medical Leave Act ("FMLA"). (Doc. 36, Ex. 1 at 22; Doc. 56 ¶ 27.) After plaintiff exhausted the twelve weeks of FMLA leave to which she was entitled, defendant deemed her further absence to be excused. (Doc. 46, Ex. 1.) On June 21, 2005, plaintiff's physician issued a notice that plaintiff could return to work, with no work restrictions, effective Monday, June 27, 2005. (Doc. 35 ¶ 30; Doc. 56 ¶ 30.) After returning to work, plaintiff reported to a pain specialist, Dr. Dennis M. Grolman, that her pain had worsened. (Doc. 46, Ex. 4.) There is no evidence, however, that any of plaintiff's health care providers changed her work

status.[2] (Id.) Plaintiff continued reporting to work[3] until August 1, 2005, when she left a message for her supervisor stating that she would not come to work on that date. (Doc. 35 ¶ 56; Doc. 46, Ex. 6; Doc. 56 ¶ 56.) Defendant discharged plaintiff a few days later, on or about August 5. (Doc. 35 ¶ 19, 60; Doc. 56 ¶ 19; Doc. 1 ¶ 19.) Defendant's purported reason for terminating plaintiff's employment was her history of poor attendance, in violation of defendant's attendance policy. (Doc. 35 ¶ 60.) Plaintiff does not dispute that her attendance record was less than perfect, but she contends that it was acceptable under defendant's policy. (Doc. 35 ¶ 54-55, 58-59; Doc. 56 ¶ 54-55, 58-59.)

Defendant's attendance policy provides that every occurrence in which an employee is absent, is tardy, or leaves early must be recorded on an attendance calendar. (Doc. 46, Ex. 2.) Progressive discipline—a verbal warning, followed by a written warning, a written reprimand, a three-day suspension, or a reprimand in

---

[2] Plaintiff asserts that "[o]n June 28, 2005, Plaintiff provided the Defendant with a medical record from her treating physician, Dr. Dennis Grolman, informing Defendant of her inability to work without restrictions." (Doc. 56 ¶ 31.) However, the evidence of record belies plaintiff's assertion. The sole exhibit which plaintiff cites in support of her contention is Dr. Grolman's "procedure" report for an epidural steroid injection, dated July 28, 2005. This medical record contains no indication that plaintiff is unable to work, nor does it note any restrictions with respect to her work status. (Doc. 46, Ex. 4.) To the contrary, it describes "WORK STATUS: As per Dr. Pandelidis" and observes that "[w]ithin several minutes post-injection the patient noted a 70% improvement in [her] symptoms with provacative maneuvers." Id. Thus, plaintiff's assertion is devoid of record support and, therefore, the court will not accept it as a fact of record or a factual issue for trial.

[3] Plaintiff incurred a tardy in the week after she returned to work, on July 6, 2005. (Doc. 35 ¶ 50; Doc. 46, Ex. 6; Doc. 56 ¶ 50.) The evidence of record does not indicate that plaintiff was absent from work between June 27 and July 31, 2005.

lieu of suspension, and finally, termination of employment—may be warranted for employees who accrue more than four occurrences in any consecutive three month period or six occurrences in any consecutive twelve month period. (Doc. 46, Ex. 2; Doc. 35 ¶¶ 13, 17; Doc. 56 ¶¶ 13, 17.) The policy provides that, while these disciplinary steps are generally followed in order, defendant's managers retain discretion to impose higher levels of discipline for more severe attendance problems. (Doc. 35 ¶ 18; Doc. 56 ¶ 18.) An employee's attendance records do not start anew on January 1 each year, and therefore, a consecutive twelve month period can span more than one calendar year. (Doc. 46, Ex. 2; Doc. 35 ¶ 14; Doc. 56 ¶ 14.)

Over the years of her employment with defendant, plaintiff received disciplinary measures for a number of attendance violations, including a three-day suspension as recently as May 2004. (Doc. 46, Ex. 5; Doc. 35 ¶ 43-47; Doc. 56 ¶ 43-47.) At no point during her employment did twelve consecutive months pass in which she had no attendance-related occurrence. (Doc. 35 ¶ 58; Doc. 56 ¶ 58.) In the twelve months prior to her termination, plaintiff failed to clock in on two occasions (September 9 and 10, 2004), was tardy on two occasions (October 19, 2004 and January 24, 2005), and had two unscheduled call-in absences (September 27 and October 20, 2004). (Doc. 35 ¶ 48; Doc. 56 ¶ 48.) Defendant issued a verbal warning for plaintiff on February 3, 2005. (Doc. 35 ¶ 49; Doc. 56 ¶ 49.) After another two unscheduled call-in absences (February 21 and 22, 2005), defendant gave plaintiff another verbal warning on February 24, 2005. (Doc. 35 ¶ 50; Doc. 56 ¶ 50.)

4

On July 14, 2005, plaintiff received an additional verbal warning, for her tardiness on July 6, 2005, approximately a week after she returned to work from her medical leave. (Doc. 46, Ex. 6; Doc. 35 ¶ 50; Doc. 56 ¶ 50.) At this time, plaintiff's supervisor notified her that her next attendance violation would result in termination. (Doc. 35 ¶ 54; Doc. 56 ¶ 54.) After plaintiff took another unscheduled call-in absence from work on August 1, 2005, defendant terminated her employment. (Doc. 35 ¶ 56; Doc. 56 ¶ 56.)

Plaintiff filed the instant suit on February 20, 2007, alleging that defendant discriminated against her on the basis of race, disability, and age, and asserting additional causes of action for intentional infliction of emotional distress, breach of contract, and retaliation. (Doc. 1.) Plaintiff later withdrew her claims for race and age discrimination (Doc. 35 ¶ 4; Doc. 56 ¶ 4), and the court dismissed her claims for intentional infliction of emotional distress and retaliation, (Doc. 35 ¶ 5; Doc. 56 ¶ 5). Defendant thereafter filed a motion (Doc. 33) for summary judgment on plaintiff's remaining claims for disability discrimination and breach of contract. Defendant asserts that plaintiff failed to make out a *prima facie* case of discrimination, failed to show that defendant's proffered reason for her termination was pretextual, and failed to establish a cause of action for breach of contract. The parties have fully briefed these issues, which are now ripe for disposition.

## II. **Standard of Review**

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact," and for which a jury trial

5

would be an empty and unnecessary formality. See FED. R. CIV. P. 56(c). It places the burden on the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

### III. Discussion

Plaintiff contends that defendant violated the ADA by engaging in disability-based discrimination and that the defendant engaged in a breach of contract. The court will address these issues *seriatim*.

#### A. Disability Discrimination Claim

The ADA[4] prohibits employers from discriminating against a qualified individual with a disability on the basis of that individual's mental or physical impairments. See, e.g., Hohider v. UPS, 574 F.3d 169, 186 (3d Cir. 2009); Skerski v. Time Warner Cable Co., A Division of Time Warner Entertainment Co., 257 F.3d

---

[4] The court notes that the ADA Amendments Act ("ADAAA") of 2008 made changes to the ADA. See Pub. L. No. 110-325. The effective date of the ADAAA, however, was January 1, 2009, id., after the events at issue in this case.

273, 278 (3d Cir. 2001). In recognition of the fact that the ADA serves the same purpose as other federal laws prohibiting employment discrimination, such as Title VII the ADEA,[5] and the Rehabilitation Act, the Third Circuit has held that the three step burden-shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 793-94 (1973), applies to discrimination claims under each of these statutes, where there is no direct evidence of discrimination. See Wishkin v. Potter, 476 F.3d 180, 185 (3d Cir. 2007). The parties agree that the McDonnell Douglas framework applies to the instant case.

The first step under McDonnell Douglas requires a plaintiff to establish a *prima facie* case of discrimination. See McDonnell Douglas, 411 U.S. at 802. To make out a *prima facie* case of discrimination under the ADA, a plaintiff must establish the following:[6] (1) that he or she has a disability "within the meaning of

---

[5] The Supreme Court "has not definitively decided whether the evidentiary framework of McDonnell Douglas . . . is appropriate in the ADEA context." Gross v. FBL Fin. Servs., --- U.S. ---, 129 S. Ct. a2343, 2349 n.2, 174 L. Ed. 119, 128 n.2 (2009). It did, however, apply the McDonnell Douglas analysis in Reeves, an ADEA case in which the parties did not dispute that doing so was proper. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000). Moreover, the Court has cited Reeves as a decision in which "the plaintiff retain[ed] the burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action." Gross, --- U.S. ---, 129 S. Ct. at 2351, 174 L. Ed. at 129.
  The Third Circuit, in a non-precedential opinion, has affirmed a District Court's grant of summary judgment on an ADEA claim where the District Court applied the McDonnell Douglas framework. See Milby v. Greater Phila. Health Action, No. 08-2865, 2009 WL 2219226, at *1 (3d Cir. July 27, 2009).

[6] The standard for establishing a *prima facie* case is "flexible and must be tailored to fit the specific context in which it is applied." Wishkin, 476 F.3d at 185 (quoting Sarullo v. United States Postal Serv., 352 F.3d 789, 797-98 (3d Cir. 2003) (per curiam)).

7

the ADA;" (2) that he or she "is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer;" and (3) that he or she "has suffered an otherwise adverse employment decision as a result of discrimination." Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 761 (3d Cir. 2004) (quoting Gaul v. Lucent Technologies, 134 F.3d 576, 580 (3d Cir. 1998)). Once the *prima facie* case is established, the burden shifts to the defendant to articulate some "legitimate, nondiscriminatory reason" for the plaintiff's treatment. Iadimarco v. Runyon, 190 F.3d 151, 157 (3d Cir. 1999) (citing McDonnell Douglas, 411 U.S. at 802); Keller v. Orix Credit Alliance, 130 F.3d 1101, 1108 (3d Cir. 1997). Once the defendant has met its burden, the plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Jones v. School Dist., 198 F.3d 403, 410 (3d Cir. 1999).

Defendant argues that plaintiff has failed to make out a *prima facie* case under the ADA,[7] because she has not established that she is disabled. There are three ways in which plaintiffs can prove that they have a disability. Plaintiffs can prove that (1) they have a "physical or mental impairment that substantially limits one or more of the major life activities of such individual;" or (2) they have a "record of such impairment;" or (3) they are "regarded as having such an impairment." 29

---

[7] Defendant further argues that, even if the court assumes, *arguendo*, that plaintiff has made out a *prima facie* case, defendant would still entitled to summary judgment on the basis that it has articulated a legitimate, nondiscriminatory reason for making an employment decision that was adverse to plaintiff, and plaintiff has failed to show that defendant's proffered reason was pretextual. In other words, plaintiff's claim would ultimately fail under the final step of the McDonnell Douglas burden-shifting analysis. The court agrees.

The defendant's burden to articulate some "legitimate, nondiscriminatory reason" for terminating the plaintiff's employment, under the second step of the McDonnell Douglas framework, is "relatively light." Woodson v. Scott Paper Co., 109 F.3d 913, 920 n.2 (3d Cir. 1996). The defendant is only required to prove that its decision could have been motivated by the proffered legitimate, nondiscriminatory reason; proof of actual causation is not required. Iadimarco, 190 F.3d at 157. In the case *sub judice*, defendant has presented a legitimate basis for discharging plaintiff: she had a poor attendance record.

At the third and final step of the burden-shifting analysis, the plaintiff may meet his or her burden of proving pretext by presenting evidence from which a reasonable factfinder could "either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Keller, 130 F.3d at 1108. Plaintiff asserts that defendant did not discharge other non-disabled employees who had attendance records as poor or worse than plaintiff's. However, plaintiff's only evidence of this purported fact is her own deposition testimony as to what the other employees told her. The court will not consider such hearsay testimony as evidence of the truth of the matter asserted. See Shelton v. Univ. of Med. & Dentistry, 223 F.3d 220, 223 n.2 (3d Cir. 2000) ("In this circuit, hearsay statements can be considered on a motion for summary judgment if they are capable of admission at trial.") (citing Stelwagon Mfg. Co. v. Tarmac Roofing Sys., Inc., 63 F.3d 1267, 1275 n.17 (3d Cir. 1995)). Therefore, it is clear that plaintiff's evidence of pretext is insufficient to avoid summary judgment.

C.F.R. § 1630.2(g); 42 U.S.C. § 12102(1). Plaintiff has not claimed that had a "record of" a disability or was "regarded as having" a disabling impairment.[8] Accordingly, those avenues of proof are foreclosed. Defendant contends that plaintiff has also failed to establish a disability through the first avenue of proof—that she has an impairment which substantially limits a major life activity. For the reasons that follow, the court agrees that plaintiff has failed to come forward with affirmative evidence creating a genuine issue of fact as to whether her ability to perform any major life activity is substantially limited, and therefore, plaintiff has failed to show that she is disabled within the meaning of the ADA.

Plaintiff claims that her injury substantially limits her ability to work. (Doc. 1 ¶ 15.) Without disputing that working is a major life activity, defendant argues that plaintiff cannot establish that she was substantially limited with respect to working.

---

[8] To have a record of impairment, plaintiff must either have "a history of" an impairment that substantially limits one or more major life activities or she must have "been misclassified as having" the same. 29 C.F.R. § 1630.2(k). To prove that she was "regarded as having" a disability, plaintiff can show any of the following: (1) she has an "impairment that does not substantially limit major life activities but is treated by [defendant] as constituting such limitation;" (2) she has an "impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment;" or (3) she has no impairment but she is "treated by [defendant] as having a substantially limiting impairment." 29 C.F.R. § 1630.2(*l*); see also Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 381 (3d Cir. 2002). A plaintiff can make such a showing by demonstrating either that "despite having no impairment at all, [defendant] erroneously believed that [plaintiff] had an impairment that substantially limited one or more of her major life activities" or that she "had a non-limiting impairment that [defendant] mistakenly believed substantially limited one or more of her major life activities." Eshelman v. Agere Sys., 554 F.3d 426, 434 (3d Cir. 2009). The court must focus on "the reactions and perceptions of the persons interacting or working" with the plaintiff and not on the plaintiff's "actual abilities." Kelly v. Drexel Univ., 94 F.3d 102, 108-09 (3d Cir. 1996).

10

To prove that her impairment substantially limits the major life activity of working, plaintiff would have to show significant restrictions on her "ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities."[9] 29 C.F.R. § 1630.2(j)(3)(i); see also Sutton v. United Air Lines, Inc., 527 U.S. 471, 492 (holding that "[i]f jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs" and that "if a host of different types of jobs are available, one is not precluded from a broad range of jobs").

Plaintiff's only evidence that she is disabled derives from the fact that "she was approved for short term disability and medical leave," and the fact that she could not perform her job as a forklift operator without restrictions. Such evidence is insufficient to support a verdict in plaintiff's favor. That plaintiff received medical leave is not supportive of her ADA claim, because the standard for qualifying for medical leave under the Family and Medical Leave Act ("FMLA") differs from the standard for disability status within the meaning of the ADA. See,

---

[9] In determining whether a plaintiff is unable to perform a class of jobs or a broad range of jobs, the court must consider the following factors: (1) "the geographical area to which the individual has reasonable access," (2) "the job from which the individual has been disqualified because of an impairment," and (3) "the number and type of jobs . . . within th[e] geographical area[] from which the individual is also disqualified because of the impairment." 29 C.F.R. § 1630.2(j)(3)(ii). The court's conclusion that plaintiff has not come forward with sufficient evidence on this issue is bolstered by plaintiff's failure to present the court with evidence regarding any of these factors.

11

e.g., 29 C.F.R. § 825.702(b) ("ADA's 'disability' and FMLA's 'serious health condition' are different concepts, and must be analyzed separately."); Robinson v. Lockheed Martin Corp., 212 F. App'x 121, 125-26 (3d Cir. 2007) (recognizing that "disability" under the ADA is a distinct concept from "serious health condition" under the FMLA) (citing Vincent v. Wells Fargo Guard Servs., Inc., of Fla., 3 F. Supp. 2d 1405, 1420 (S.D. Fla. 1998)). Nor is the court persuaded that receiving benefits under a short term disability plan proves that plaintiff is disabled within the meaning of the ADA. See Ellis v. Ethicon, Inc., Civil Action No. 05-726, 2008 U.S. Dist. LEXIS 27202, at *46 n.9 (D.N.J. Mar. 28, 2008) (holding that a determination of eligibility for continuing short-term disability does not "meet the qualifications for being 'disabled' under the ADA."); Bennett v. Calabrian Chems. Corp., 126 F. App'x 171, 172 (5th Cir. 2005) (per curiam) ("The legal definition of a disability under the ADA is different from the eligibility criterion for [an employer's] short term disability plan . . . ."); see also Weigel v. Target Stores, 122 F.3d 461, 466 (7th Cir. 1997) (holding that the "decision to grant [Social Security] disability benefits . . . is not determinative as to whether or not [a claimant] may be considered a 'qualified individual' under the ADA"); Andreoli v. Gates, 482 F.3d 641, 651 (3d Cir. 2007) (rejecting a claimant's argument that "her receipt of worker's compensation benefits is evidence that she is disabled"). See also discussion supra note 2.

Plaintiff's purported inability to work as a forklift operator is also insufficient to support her ADA claim, as it is clearly established that "[t]he inability to perform

12

a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i). Plaintiff fails to identify a class or broad range of jobs from which her impairment disqualifies her.[10] Without such evidence, plaintiff cannot establish that her impairment substantially limited her ability to work. Furthermore, plaintiff has neither argued nor presented evidence suggesting that she is substantially limited in her ability to perform any major life activity other than working. Therefore, plaintiff has failed to come forth with evidence showing that she is disabled under the ADA, and she cannot establish a *prima facie* case. Accordingly, the court must grant summary judgment in defendant's favor on plaintiff's ADA claim.

B.   **Breach of Contract Claim**

In her complaint, plaintiff alleges that defendant formed an express employment contract with her, through various writings such as its personnel

---

[10] In Marinelli v. City of Erie, 216 F.3d 354, 363 (3d Cir. 2000), the Third Circuit held that a physician's restriction on an ADA claimant's ability to perform "all super heavy and heavy jobs and all medium, light and sedentary positions requiring bilateral grip or repetitive use of the left extremity" was insufficient for the claimant to avoid judgment as a matter of law, because the restriction did not "indicate . . . the class of jobs (e.g., meatpacker, pilot, chef) from which he is disqualified as a result of his impairment (and resulting restrictions)." 216 F.3d at 364-65. Here, plaintiff relies on an even narrower restriction on her ability to work: she merely contends that she could not, without restrictions, work as a forklift operator. Like the claimant in Marinelli, plaintiff failed to identify the range of jobs from which her injury disqualifies her. This vitiates her claim, insofar as it relates to the major life activity of working.

13

handbook and its employee retirement plan,[11] and plaintiff complains that defendant breached the contract. (Doc. 1 ¶¶ 39-42.) Defendant contends the documents in question do not change plaintiff's at-will employment status and that plaintiff cannot establish the existence of a contract.[12] The court agrees with defendant on this issue.

Under Pennsylvania law, employment is presumed to be at will, and the burden of overcoming this presumption "rests squarely with the employee." Luteran v. Loral Fairchild Corp., 688 A.2d 211, 214 (Pa. Super. 1997). In the case *sub judice*, plaintiff relies on defendant's employee handbook and retirement plan

---

[11] Plaintiff makes no explicit reference to defendant's employee retirement plan, but she alleges entitlement to "pension rights" and benefits from defendant's "employee retirement fund," (see Doc. 1 ¶¶ 40, 42).

[12] Defendant also argues that plaintiff cannot establish a cause of action for breach of contract because her claim is preempted by the Pennsylvania Human Relations Act ("PHRA"), 43 PA. STAT. ANN. §§ 951 *et seq.*, and by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* As a rule, when a plaintiff brings a common law claim, such as a breach of contract claim, that is supported by nothing more than an alleged act of discrimination, the PHRA preempts such a claim. Keck v. Commercial Union Ins. Co., 758 F. Supp. 1034, 1039 (M.D. Pa. 1991) ("If . . . the act that would support the common law claim is only an act of discrimination, the claim is preempted by and must be adjudicated within the framework of the PHRA. . . . [T]he breach complained of must be something other than the discrimination complained of."); see also King v. M.R. Brown, Inc., 911 F. Supp. 161, 168 (E.D. Pa. 1995). Similarly, ERISA preempts state law actions, including breach of contract claims, to the extent that litigants bring such actions to enforce their right to benefits under plans covered by ERISA. See Pryzbowski v. U.S. Healthcare, Inc., 245 F.3d 266, 278 (3d Cir. 2001) ("[S]uits . . . for denial of benefits, even when the claim is couched in terms of common law negligence or breach of contract, have been held to be preempted by § 514(a)."). The court need not evaluate the applicability of these rules to the instant case, however, because it finds as a preliminary matter that plaintiff has failed to prove the existence of a contract.

14

to establish the existence of a contract. The Supreme Court of Pennsylvania has held that a handbook can constitute an offer to form a contract only if the employee can show that the employer intended to offer the handbook as a contract. Morosetti v. Louisiana Land & Exploration Co., 564 A.2d 151, 152-53 (Pa. 1989). According to the court, "[i]t is not sufficient to show only that [the employer] had a policy. It must be shown that they offered it as a binding term of employment." Id. at 153. Here, the plaintiff cannot make such a showing. Indeed, defendant's handbook expressly disclaims intent to form a contract of employment; it states that it "is not a contract of employment." (Doc. 36, Ex. 1, dep. ex. 3 at 5.) Nor does defendant's employee retirement plan contain any indication that the employer intended to alter the at-will employment relationship. (See Doc. 36, Ex. 1, dep. ex. 30.) It does not set a definite duration for employment, nor does it provide that employment will be terminated only for just cause. Hence, it does not overcome the presumption of at-will employment. See Luteran, 688 A.2d at 214 (holding that a litigant can rebut the presumption of at-will employment by establishing "an agreement for a definite duration" or "an agreement specifying that the employee will be discharged for just cause only").[13] Plaintiff cannot refute the presumption that she is an at-will employee, and therefore, termination of her employment is not actionable as a breach of contract. See id. ("As a general rule, there is no common

---

[13] Pennsylvania law also recognizes that an employee can rebut the presumption of at-will employment by demonstrating "sufficient additional consideration" or "an applicable recognized public policy exception," see Luteran, 688 A.2d at 214, but such circumstances are not presented in the instant case.

law cause of action against an employer for termination of an at-will employment relationship."). Thus, summary judgment is appropriate.

**IV. <u>Conclusion</u>**

Neither plaintiff's ADA claim nor her breach of contract claim can survive defendant's motion (Doc. 33) for summary judgment. The court must grant summary judgment because plaintiff has failed to demonstrate that she has a disability under the ADA and because she cannot establish the existence of a contract. In the absence of evidence showing a disability and a contract, a jury trial on plaintiff's claims would be an unnecessary formality.

An appropriate order follows.

                                      <u>S/ Christopher C. Conner</u>
                                      CHRISTOPHER C. CONNER
                                      United States District Judge

Dated:      November 27, 2009

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHIRLEY A. JAMISON**, | : | CIVIL ACTION NO. 1:07-CV-0324 |
| Plaintiff | : | (Judge Conner) |
| v. | : | |
| **CAMPBELL CHAIN COOPER TOOLS**, | : | |
| Defendant | : | |

## ORDER

AND NOW, this 27th day of November, 2009, upon consideration of defendant's motion for summary judgment (Doc. 33), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motion (Doc. 33) for summary judgment is GRANTED. See Fed. R. Civ. P. 56(c).

2. The Clerk of Court is directed to enter JUDGMENT in favor of defendants and against plaintiffs on all claims.

3. The Clerk of Court is directed to CLOSE this case.

                                              S/ Christopher C. Conner
                                        CHRISTOPHER C. CONNER
                                        United States District Judge